2015 BNH 008

_____

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF NEW HAMPSHIRE

In re:

                                                      Bk. No. 13-10555-BAH
                                                      Chapter 7

Mark D. Millette &
Linda L. Millette,
              Debtors


Olga L. Gordon, Chapter 7 Trustee &
Woodsville Guaranty Savings Bank,
              Plaintiffs,

v.                                                      Adv. No. 14-1001-BAH

Mark D. Millette &
Linda L. Millette,
              Defendants

*Ashley S. Whyman*
*Murtha Cullina LLP*
*Boston, Massachusetts*
*Attorney for Chapter 7 Trustee*

*Gregory A. Moffett*
*Preti Flaherty, PLLP*
*Concord, New Hampshire*
*Attorney for Woodsville Guaranty Savings Bank*

*Michael B. Fisher*
*Fisher Law Offices, PLLC*
*Hanover, New Hampshire*
*Attorney for the Debtor*

## MEMORANDUM OPINION

### I.  INTRODUCTION

The Court has before it the Joint Motion for Summary Judgment (Doc. No. 43) (the "Motion") filed by the plaintiffs, the chapter 7 trustee (the "Trustee") and Woodsville Guaranty Savings Bank (the "Bank").   In the Motion, the Trustee and Bank request summary judgment on the only count of the complaint, which seeks turnover of certain payments to be made to debtor

Linda Millette, pursuant to a final decree of divorce entered in 2008 by the Haverhill Family Division Court.   The defendant Debtors oppose the Motion, arguing that the payments in question are alimony or spousal support payments that are not property of the bankruptcy estate and thus not subject to turnover.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and Local Rule 77.4(a) of the United States District Court for the District of New Hampshire.   This is a core proceeding in accordance with 28 U.S.C. § 157(b) in which all parties have consented to this Court entering final judgment.

## II.  FACTS

The Debtors filed their bankruptcy petition on March 6, 2013 (the "Petition Date").   The Trustee filed her complaint for turnover pursuant to 11 U.S.C. § 542 on January 8, 2014.[1]   Soon after the Debtors filed their answer to the complaint, in December 2014, the Bank intervened as co-plaintiff to the Trustee.

The payments the Trustee and the Bank seek to have the Debtors relinquish stem from a 2008 divorce decree.   In that year, debtor Linda Millette—then Linda Elliott—divorced her erstwhile husband, Jeffrey Elliott ("Mr. Elliott").   See Motion, Ex. A (the "Divorce Decree").   In the divorce, Mr. Elliott agreed to make certain payments to the Debtor.   Paragraph 5 of the Divorce Decree provides:

> Wife shall be awarded $50,000 per year for eight years, beginning February 1, 2010 and ending February 1, 2018.   Spousal support payments shall not terminate upon payee's remarriage or cohabitation with an unrelated person.   Spousal support

---

[1] All further statutory references to "section," "§," "Code," or "Bankruptcy Code" are to title 11 of the United States Code, unless otherwise indicated.

payments shall be paid directly to Linda Elliott on an annual basis.   *See attached Uniform Support Order.*

Id. ¶ 5 (italics in original).[2]   Going forward, the Court shall refer to these payments as the "Support Payments."

In 2012, the Debtor collaterally assigned her right to receive the future Support Payments to the Bank as security for certain loans.   See Motion, Ex. D, "Assignment."   This assignment encompassed the Support Payments to be made in 2013 and onward, and was to be effective even if the Support Payments were modified.   Id.   As of the Petition Date, Mr. Elliot had paid the Debtor $200,000 in Support Payments, leaving $200,000 yet to be paid.   This remaining $200,000 in Support Payments is the amount that the Trustee and Bank are seeking turnover of in their complaint.   The post-petition Support Payments for 2014 and 2015 were made pursuant to the Divorce Decree and are being held in escrow by Debtors' counsel, pending the resolution of this dispute.

The Support Payments are neither listed on the Debtors' Schedule B nor claimed as exempt on their Schedule C.   The Support Payments are identified in the Statement of Financial Affairs as a "Divorce Property Settlement."   Statement of Stipulated Facts, ¶ 23.   Finally, the Debtors did not identify the Support Payments received as alimony in their federal tax returns, pre-petition. Post-petition, and after this adversary proceeding commenced, they amended these tax returns to refer to the Support Payments as alimony.

Positions of the Parties

In their initial memoranda supporting and opposing the Motion, the parties confined their arguments to a discussion of the legal characterization of the Support Payments.   The Trustee and

---

[2]  The Uniform Support Order referred to is not in the summary judgment record.

Bank argued that the Support Payments were in reality a property settlement under New Hampshire law and thus subject to turnover.   In making this argument, the plaintiffs urged the Court to disregard the labeling of the Divorce Decree and look at the substance of the arrangement and the different ways the Debtors characterized the payments in their petition and tax returns. The plaintiffs also referred to bankruptcy law in their original memorandum, although arguing that it was not controlling.   They cited cases discussing 11 U.S.C. § 522(d)(10)—the federal exemption for spousal support payments—and § 523(a)(5), which renders domestic support obligations of a debtor nondischargeable.   These cases discuss the parameters that federal law uses to distinguish property settlements from alimony or spousal support.

The Debtors opposed this view, arguing that federal bankruptcy law controlled the characterization of the Support Payments, and that the Court ought to conclude that the payments were alimony, not a property settlement, and thus not subject to turnover.   The Debtors did not discuss New Hampshire law in their opening brief.   The Debtors also argued that issues of material fact prevented the Court from characterizing the Support Payments at the summary judgment phase—that the Court could not resolve the conflicting facts in the record regarding how the Debtors and Mr. Elliott treated the Support Payments.

At the hearing on the Motion, the Court questioned why the legal characterization of the Support Payments as either a property settlement or as alimony made any difference to whether they were subject to turnover, since the Debtors had not claimed them as exempt and neither side claimed the Support Payments were outside the realm of bankruptcy estate property.   After raising this issue, the Court required both sides to file further memoranda.

In their supplemental memorandum, the Debtors took the position that, categorically, alimony or spousal support payments cannot be property of a bankruptcy estate because such payments are not a "property interest" within the meaning of § 541, but rather are a "personal interest" of the recipient debtor.   To support this line of argument, the Debtors cite a relatively small number of cases.   The Debtors do not cite any New Hampshire state law directly supporting the proposition that spousal support payments are not a property interest.

The Trustee and Bank respond to this new line of argument by distinguishing the cases the Debtors cite.   They argue that the substance of the Divorce Decree is completely distinguishable from those discussed in the case law the Debtors cite.   Further, the Trustee and Bank argue that if alimony were not a property interest that is included as part of the bankruptcy estate, there would be no need for the alimony exemption in § 522(d)(10).

After the parties submitted their supplemental memoranda, the Court took the matter under advisement.

## III.   DISCUSSION

### A.      Summary Judgment Standard

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).   "Genuine issues of fact are those that a factfinder could resolve in favor of the nonmovant, while material facts are those whose 'existence or nonexistence has the potential to change the outcome of the suit.'"   Green Mountain Realty Corp. v. Leonard, 750 F.3d 30, 38 (1st Cir. 2014) (quoting Tropigas de Puerto Rico, Inc. v. Certain Underwriters at Lloyd's of London,

5

637 F.3d 53, 56 (1st Cir. 2011)).   In assessing the summary judgment record, a court must draw

all reasonable inferences in favor of the non-moving party but is "not obliged to accept as true or to

deem as a disputed material fact, each and every unsupported, subjective, conclusory, or

imaginative statement made to the [c]ourt by a party."   Adamson v. Walgreens Co., 750 F.3d 73,

78 (1st Cir. 2014) (citation omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 424,

249-50 ("If the evidence is merely colorable or is not significantly probative, summary judgment

may be granted.") (internal citations omitted).

The Trustee and Bank seek turnover of the Support Payments that were unpaid as of the

petition date.   Section 542 governs such turnover actions.   It provides, in pertinent part:

> (a) Except as provided in subsection (c) or (d) of this section, an entity, other than a
> custodian, in possession, custody, or control, during the case, of property that the
> trustee may use, sell, or lease under section 363 of this title, or that the debtor may
> exempt under section 522 of this title, shall deliver to the trustee, and account for,
> such property or the value of such property, unless such property is of
> inconsequential value or benefit to the estate.

11 U.S.C. § 542(a).   "[T]he inquiry involved in a ruling on a motion for summary judgment . . .

necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on

the merits."   Anderson, 477 U.S. at 252.   To prevail, the Trustee and Bank bear the burden of

proof by a preponderance of the evidence to demonstrate that the elements of § 542 are satisfied.

See Bailey v. Suhar (In re Bailey), 380 B.R. 486, 490 (B.A.P. 6th Cir. 2008); In re Belenkova, No.

12-17475-FJB, 2014 WL 1203131, at *16 (Bankr. D. Mass. March 24, 2014); Collier on

Bankruptcy ¶ 542.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.).[3]   The only element in

dispute in this adversary proceeding is whether the post-petition Support Payments constitute

"property that the trustee may use, sell, or lease under section 363 . . . or that the debtor may

---

[3] The party opposing the turnover action generally bears the burden of proof to demonstrate inconsequential value to
the estate.   See Belenkova 2014 WL 1203131 at * 16; Collier on Bankruptcy ¶ 542.02.

exempt under section 522 . . . ."  § 542(a).   Put more succinctly, the only element in dispute is

whether the Support Payments are property of the estate under § 541—only property of the

bankruptcy estate may be the object of a turnover action.   See Brown v. Pyatt (In re Pyatt), 486

F.3d 423, 427 (8th Cir. 2007) ("By referring to § 363, a section which authorizes the trustee to

'use, sell, or lease . . . property of the estate,' the drafters of § 542(a) made it clear that the turnover

obligation applies to property of the estate.").

Section 541 provides, in pertinent part, that:

(a) The commencement of a case under section 301, 302, or 303 of this title creates
an estate. Such estate is comprised of all the following property, wherever located
and by whomever held:
(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or
equitable interests of the debtor in property as of the commencement of the case.

11 U.S.C. § 541(a)(1).   State law defines property interests; absent the requirement of "some

federal interest," state law is the beginning and end of the inquiry into what property belongs to a

debtor pre-petition.   Butner v. United States, 440 U.S. 48, 55 (1979).   If the property was the

debtor's property pre-petition, § 541(a)(1) brings that property into the estate, absent some specific

provision to the contrary contained elsewhere in the Bankruptcy Code.

Here, the Court looks to New Hampshire law to determine whether alimony[4] is a property

interest of the Debtor.   In New Hampshire, alimony is governed by statute.   See RSA 458:19.

This statute requires the state courts to take a number of factors into consideration when awarding

alimony.   After alimony is awarded, a court may modify it upon motion.   See id.; Stebbins v.

Stebbins, 121 N.H. 1060, 1063 (1981) ("[C]ontinuing obligations, such as alimony and child

---

[4]  The parties in their briefs and the case law use the terms "alimony" and "spousal support" interchangeably.   There is
no legal or semantic error in using the terms as synonyms.   See *Alimony*, Black's Law Dictionary (9th ed. 2009) ("1.
A court-ordered allowance that one spouse pays to the other spouse for maintenance and support . . . after they are
divorced . . . .   Also termed *spousal support*.").

support, involve indefinite payments which remain modifiable by the court."); Fowler v. Fowler,

145 N.H. 516, 520 (2000) ("The primary purpose of alimony is rehabilitative . . . . 'Rehabilitative'

alimony is based on the theory that modern spouses are equally able to function in the job market

and to provide for their own financial needs.").   Under New Hampshire law, there is no

exemption for alimony or support from trustee process, see RSA 512:21, or from attachment, see

RSA 511:2.

The Debtors argue that alimony is not a property right under New Hampshire law, but

rather a personal right which—because it is a personal right—does not become property of the

estate under § 541.   To support this argument, the Debtors cite to several decisions from outside

the First Circuit.   First, the Debtors point to Wise v. Peters (In re Wise), 346 F.3d 1239 (10th Cir.

2003).   In Wise, the debtor's divorce was finalized nearly ten years before the petition date, and,

at the time the debtor filed the petition, the alimony obligation of the non-debtor ex-spouse was

still in effect.   The chapter 7 trustee sought turnover of the alimony payments the debtor received

during the 180-day post-petition period, pursuant to § 541(a)(5)(B).[5]   The bankruptcy court

denied the trustee's motion, based on its finding that the alimony payments were not a property

interest.   It determined that, under Colorado Law, "alimony or maintenance payments do not

share the normal indicia of 'property rights,'" leading to the conclusion that "alimony and

---

[5] This section provides:

> (a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held:
> (5) Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date—
> (B) as a result of a property settlement agreement with the debtor's spouse, or of an interlocutory or final divorce decree

11 U.S.C. § 541(a)(5)(B).

maintenance constitute[] a personal right as opposed to a property right." In re Wise, 264 B.R.

701, 705 (Bankr. D. Colo. 2001).   On appeal, the Tenth Circuit affirmed the bankruptcy court

decision.   To support this conclusion the circuit court cited several Colorado state court decisions

discussing the purpose of alimony and the United States Supreme Court decision, United States v.

Davis.   See Wise, 346 F.3d at 1242 (citing United States v. Davis, 370 U.S. 65 (1965)).

In Davis, 370 U.S. at 70, the Supreme Court held that the transfer of stock by voluntary

property settlement, incorporated into a final decree of divorce, constituted a taxable transfer under

the Internal Revenue Code.   The taxpayer had advanced the argument that a transfer of property

in the context of a divorce was more like a division of property among co-owners—which is not a

taxable event—than an ordinary transfer of property between unrelated parties.   In the course of

explaining why it was not siding with the taxpayer, the Court stated:

> In the present context the rights of succession and reasonable share do not differ
> significantly from the husband's obligations of support and alimony.   They all
> partake more of a personal liability of the husband than a property interest of the
> wife.   The effectuation of these marital rights may ultimately result in the
> ownership of some of the husband's property as it did here, but certainly this
> happenstance does not equate the transaction with a division of property by
> co-owners.

Id.   The Court explained that it was not prepared to equate a divorcing spouse's contingent right to

some undefined portion of a soon-to-be ex-spouse's property with a division of property among

titled co-owners, at least for the purposes of deciding whether a taxable event had occurred.

The Wise court homed in on the language in Davis comparing support and alimony

obligations to a "personal liability" and used the analysis to lend support to the idea that the spouse

on the receiving end of the alimony and support obligation does not have any type of property

interest in those rights to payment.

Other courts, before and after <u>Wise</u> have taken a similar approach, both in analyzing post-petition alimony payments received by a debtor within the parameters of § 541(a)(5)(B) and using the Supreme Court's <u>Davis</u> decision to help justify the result.   See, e.g., <u>Kelly v. Jeter (In re Jeter)</u>, 257 B.R. 907 (B.A.P. 8th Cir. 2001) (chapter 7 trustee can recover funds from property settlements, but cannot recover debtor funds attributable to alimony under § 541(a)(5)(B)); <u>In re Mitchem</u>, 309 B.R. 574 (Bankr. W.D. Mo. 2004) (same); <u>Phillips v. Rinehart (In re Rinehart)</u>, 352 B.R. 427 (Bankr. E.D. Va. 2005) (following other cases, but without reference to state law); <u>In re Anders</u>, 151 B.R. 543 (Bankr. D. Nev. 1993) (holding that alimony is not property of the estate before it becomes due and thus the chapter 7 trustee may only reach those payments coming due within the first 180 days of the bankruptcy case per § 541(a)(5)(B)).

Because the Court finds the legal reasoning in <u>Wise</u> and these other decisions to be flawed, it declines to follow their example.[6]   To begin with the Court does not find § 541(a)(5)(B) to be applicable where the divorce decree became final pre-petition—as is the case here and was the case in <u>Wise</u> and the cases that share in its legal conclusion.   See <u>Lonstein v. Rockman (In re Lonstein)</u>, 950 F.2d 77 (1st Cir. 1991).   In <u>Lonstein</u>, the First Circuit Courts of Appeals analyzed when the debtor's interest in his mother's will vested.   <u>Id.</u> at 80.   It found that under state law, the debtor's interest vested pre-petition, immediately on his mother's death.   Because the interest vested before the petition date, § 541(a)(5) was not applicable:

> Subsections 541(a)(1) and (a)(5)(A) focus on mutually exclusive time periods.
> Thus, under the express language of subsection 541(a)(1), any legal or equitable
> interest of the chapter 7 debtor in a bequest as of the commencement of the chapter
> 7 case is property of the chapter 7 estate.   Bankruptcy Code § 541(a)(5)(A), on the
> other hand, is not implicated unless "the debtor acquires or becomes entitled to

---

[6] For an in depth discussion and critical view of this body of case law, <u>see</u> Christopher Celentino, <u>Divorce and Bankruptcy: Spousal Support as Property of the Estate</u>, 28 Cal. Bankr. J. 542 (2006).

> acquire" an "interest in property" by bequest "within 180 days after " the date of the commencement of the case (emphasis added).

Id., at 79.   Under New Hampshire law, there is no indication that the Debtor's interest in the Supports Payments did not vest immediately upon the Divorce Decree becoming final.   It is true that not all of the payments are yet due, and that the future payments may be contingent on the state court refraining from their modification.   But neither of those truths detracts from the existence of the Divorce Decree on the petition date, and the Debtor's entitlement at that time to be paid a specific sum of money on a series of specific dates for a set duration.   The Debtor has not pointed to anything under New Hampshire law to the contrary, and the Court's independent search of the leading New Hampshire cases on alimony did not lead to a different conclusion.   Given the content of New Hampshire law, the Court is compelled to follow Lonstein in this context.

The Court's holding is limited to the facts presently before it, where the Divorce Decree is explicitly enforceable upon the probate estates of both the Debtor and Mr. Elliot, and where the Support Payments continue regardless of whether the Debtor remarries.   The Court has not decided whether alimony payments would be "vested" within the meaning of Lonstein in the more common scenario where the hypothetical payments would cease upon the death of either party or the remarriage of the supported spouse.   Those are not the facts present here, and the Court does not need to make that decision today.   Accordingly, it is entirely possible that a bankruptcy estate would only be able to access certain types of payments awarded in divorce decrees through § 541(a)(5), even where the divorce decree had entered pre-petition.

Wise and the related case law do not undertake significant analysis of when support payments vest under state law.   Those decisions assume that the payments do not vest until they become due, and move straight into an analysis of § 541(a)(5)(B).   At least one other bankruptcy

court has criticized <u>Wise</u> and the other cases for the same reason.   See <u>Mehlhaff v. Allred (In re Mehlhaff)</u>, 491 B.R. 898, 902 (B.A.P. 8th Cir. 2013) ("Critically, the right to such alimony did not vest after the bankruptcy, but before, when the judgment awarding alimony to the [d]ebtor was entered.   Therefore, § 541(a)(5)(B) . . . [is] beside the point.").   For these reasons, the Court does not find <u>Wise</u> and the other cases cited above to be persuasive.

Neither does the Court find anything under New Hampshire law to support the Debtor's argument that the Support Payments are not a property interest under state law.   The Supreme Court's <u>Davis</u> decision is inapposite.   The discussion in that case involved federal tax law, not New Hampshire law in particular.   Indeed, on at least one occasion the New Hampshire Supreme Court has held that the federal tax treatment of payments made pursuant to a divorce decree is irrelevant for the purpose of characterizing those payments under state law.   See <u>Lawton v. Lawton</u>, 113 N.H. 429, 430-31 (1973).   Given the lack of anything concrete in New Hampshire law that would indicate alimony is not a property interest of the supported party, the Court declines to extend the language in <u>Davis</u> beyond the limited holding in that case.   While courts in some other states have held that alimony is not a property right, New Hampshire is not one of those states.   Cf. <u>Cain v. Cain</u>, 91 N.M. 423, 424 (1973) ( "The right to alimony under New Mexico case law is a continuation of the right to support and is personal and not a property right.").   Accordingly, the Court finds that under New Hampshire law, alimony or spousal support payments are a property right, not a personal right.   As such, the Support Payments became property of the estate pursuant to § 541(a)(1).

Because the Court has determined that alimony is a property interest under New Hampshire law, there is no reason for the Court to determine whether the Support Payments actually constitute alimony or a property settlement.   None of the parties disputed that if the

Support Payments were characterized as a property interest, they would be subject to turnover.

So, either as alimony, spousal support, or property settlement, the Support Payments are subject to

turnover.   Accordingly, the Court will grant the Motion.


## IV.   CONCLUSION

For the reasons stated, the Court shall grant the Joint Motion for Summary Judgment.

This opinion constitutes the Court's findings of fact and conclusions of law in accordance with

Federal Rule of Bankruptcy Procedure 7052.   The Court will issue a separate judgment consistent

with this opinion.

ENTERED at Manchester, New Hampshire.


Date:   9/28/2015                    /s/ Bruce A. Harwood
                                     Bruce A. Harwood
                                     Chief Bankruptcy Judge